**Sandra R. MacINTOSH (Truitt), Appellant–Petitioner,**

v.

**Mark S. MacINTOSH, Appellee– Respondent.**

No. 10A01–0012–CV–413.

Court of Appeals of Indiana.

June 11, 2001.

Vicki L. Carmichael, Jeffersonville, IN, Attorney for Appellant.

J. Charles Guilfoyle, Guilfoyle & Thomas, Jeffersonville, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-petitioner Sandra R. MacIntosh (now Truitt) appeals the trial court's order finding her in contempt, imposing sanctions, and awarding appellate attorney fees to her former husband, appellee-respondent Mark S. MacIntosh. Sandra contends that she did not willfully disobey a previous order regarding visitation, and she insists that, even if she were in contempt, the court fashioned an excessive and punitive remedy. In addition, Sandra asserts that the appellate attorney fee award was unwarranted.

### FACTS

Sandra and Mark were divorced in 1992. The couple had two children: Jennifer, born on August 25, 1983, and Allyson, born on July 16, 1984. Sandra received custody of the two children, and Mark was awarded visitation.

The present controversy began in 1999 when Sandra filed a petition to modify child support, and Mark filed a cross-petition. At that time, Mark was exercising regular visitation with Allyson, who had traveled to Switzerland with him on two occasions. Jennifer had not participated in visitation with her father for approximately three years. At a May 16, 2000 hearing on the motions, Mark advised the court that he hoped to take Allyson to Switzerland again that summer. The court noted the "tug of war" over the children and urged Mark to invite Jennifer to Switzerland. Record at 114.[1] On May 17, 2000, the court modified Mark's support obligation but deviated from the Child Support Guidelines, in part, due to expenses related to his extended visitation with Allyson in Switzerland.

Thereafter, Mark contacted Jennifer, who told him she wanted to go to Switzerland. Mark purchased airplane tickets for both Jennifer and Allyson for the period June 15, 2000 through June 30, 2000. When he later learned that the children did not plan to accompany him, Mark filed an "Emergency Petition to Establish Summer Visitation Dates for Travel to Switzerland" because Sandra allegedly "refused to communicate" with Mark "in a reasonable fashion." R. at 24–25. On May 31, 2000, the court heard evidence on the contested petition and conducted an in camera interview with both children. Because Sandra had scheduled Allyson's tonsillectomy and adenoidectomy for June 14, Mark offered to move the vacation date to June 20.

On June 5, 2000, the trial court granted Mark's emergency petition in an order that reads in part:

2. Petitioner/Mother, Sandra Truitt, and parties' daughter, Jennifer MacIntosh, are ordered to obtain Jennifer's passport as soon as possible and prior to June 20, 2000;

3. The parties' children, Jennifer MacIntosh and Allyson MacIntosh, are ordered to accompany their Father,

---

1. Citations throughout the opinion are to the Record, designated hereinafter as "R." and to the Supplemental Record, designated as "Supp. R."

Mark MacIntosh, on the trip to Switzerland.

Supp. R. at 1. Angry about the court-ordered visitation, the two children refused to communicate with Mark. On June 13, 2000, Sandra filed a praecipe in the trial court with the apparent purpose of appealing the May 17 and June 5 orders, but she did not perfect that appeal.[2]

On June 19, one day before the scheduled Switzerland vacation, Sandra took Jennifer to Park View Psychiatric Services. The psychiatrist who examined Jennifer concluded that, "considering a history of mental abuse from father to her, her sister, and her mother," Jennifer should not be required to go to Switzerland. R. at 197. On that same day, Sandra obtained medical documentation stating that Allyson should not travel by air for two weeks. Sandra notified Mark's attorney of the medical information but did not seek court intervention. Neither child went to Switzerland.

Thereafter, Mark filed a petition for contempt. Separately, Mark sought $2,500.00 in attorney fees to defend the first appeal initiated by Sandra. On October 26, 2000, the court found Sandra was in contempt of the June 5, 2000 order "for her failure to have either of the parties' children attend the trip to Switzerland." Supp. R. at 8. "[A]s punishment for her contempt," the court imposed a $1,000.00 fine and committed Sandra to the Clark County jail for two years, "suspended upon the condition that [Sandra] and the children of the parties comply with the [general] visitation order[.]" Supp. R. at 8. The court also ordered Sandra to pay: 1) $306.70 to Mark for expenses incurred in changing travel dates; 2) $1,022.50 for attorney fees related to the emergency petition for visitation;

and 3) $1,246.25 for attorney fees related to the contempt proceedings. In addition, the court awarded Mark $2500.00 in attorney fees "being incurred" in defending the earlier appeal. Supp. R. at 9. Sandra then perfected this appeal.

## DISCUSSION AND DECISION

### I. Finding of Contempt

Sandra first challenges the trial court's finding of contempt. In essence, she argues that the evidence is insufficient to support such a determination.

Indirect contempt involves the willful disobedience of any lawfully entered court order of which the offender had notice. *Meyer v. Wolvos*, 707 N.E.2d 1029, 1031 (Ind.Ct.App.1999), *trans. denied.* The determination of whether a party is in contempt of court is a matter entrusted to the trial court's sound discretion, and we reverse that determination only for an abuse of discretion. *Williamson v. Creamer*, 722 N.E.2d 863, 865 (Ind.Ct.App. 2000). A court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Id.* When reviewing a contempt order, we neither reweigh evidence nor judge witness credibility. *Id.* Instead, we consider only the evidence and reasonable inferences drawn therefrom that support the trial court's judgment, and we reverse the trial court's contempt judgment only if there is no evidence to support it. *Id.*

Here, Sandra points out that the June 5, 2000 order expressly commanded her only to obtain a passport for Jennifer. Sandra claims that the order is void because it improperly directs the children's

---

**2.** After Sandra filed her praecipe, the trial court amended its May 17 order, but that amendment is not material to this appeal.

conduct and that it is ambiguous because it did not put her on notice that she was to do anything or refrain from doing anything. The visitation order necessarily directed the conduct of the children affected by the marital dissolution. *See Hartzell v. Norman T.L.*, 629 N.E.2d 1292, 1295 (Ind. Ct.App.1994), *trans. denied*. Yet it was not enforceable against the children. *See In re Marriage of Brown*, 597 N.E.2d 1297, 1299 (Ind.Ct.App.1992). Rather, Sandra was the party before the court. As the parent with legal custody and authority over her minor daughters, Sandra was impliedly ordered to make reasonable efforts to ensure that the children complied with the scheduled parenting time. *See Hartzell*, 629 N.E.2d at 1294–95. We conclude that the order was neither void nor ambiguous.

■ In a separate argument, Sandra insists that she could not force her fifteen and sixteen-year-old children to participate in visitation. Another panel of this court has stated that, "where a young adult is unwilling to visit the noncustodial parent, the trial court may not hold the custodial parent in contempt for not forcing the young adult to visit." *Brown*, 597 N.E.2d at 1300. As authority for that statement, the panel relied solely upon *Moody v. Moody* 565 N.E.2d 388, 390 (Ind.Ct.App. 1991), where we found no abuse of discretion in the trial court's failure to order the mother to allow the father to visit his eighteen and twenty-one-year-old children who did not want to see him. *Moody* is distinguishable in that the children involved in that case were no longer minors. In addition, in *Moody*, we were asked to decide whether the trial court abused its discretion in the matter, and we decided it had not. *Moody* does not foreclose a contempt finding in every instance where an adolescent or teenager does not want to participate in visitation.

Indeed, we have rejected the notion that a custodial parent may justify inaction simply because a child refuses to cooperate with a visitation order. *See Hartzell*, 629 N.E.2d at 1294; *see also Clark v. Atkins*, 489 N.E.2d 90, 97 (Ind.Ct.App.1986) (holding that desires of minor children over whom mother had custody did not justify noncompliance with visitation order), *trans. denied*. The supreme court's newly promulgated Parenting Time Guidelines, effective March 31, 2001, embody the principle that both parents are responsible to ensure that the child complies with the scheduled parenting time. Parenting Time Guideline § I(E). "In no event shall a child be allowed to make the decision on whether scheduled parenting time takes place." *Id*. Sandra has not shown that the trial court abused its discretion when it declined to find that the children's wants justified her noncompliance with the visitation order.

■ Sandra also argues that the children's health required that she disregard the order. It is not unreasonable for a child to be unable to fly six days after surgery, and subsequent events showed that Jennifer was pregnant, which may have contributed to her reluctance to travel. Nevertheless, Sandra's argument fails for two reasons. First, the record indicates that the trial court had conducted multiple hearings where both parents testified about the Switzerland trip, Allyson's surgery, and Jennifer's relationship with Mark. The court also interviewed both children. It is not unreasonable from this Record to conclude that Sandra opposed the Switzerland trip from its inception. Placed in context, the court found the medical documents "highly suspect" and expressly rejected the reasons advanced by Sandra as a valid basis for her refusal to comply with the order. Supp. R. at 7. This court cannot now reweigh the evi-

dence and assign the medical opinions greater weight than did the trial court. *See Williamson,* 722 N.E.2d at 865.

Finally, we note that there is no advice-of-medical provider defense that excuses disobeying a court order. *See Francis v. Francis,* 654 N.E.2d 4, 7 (Ind.Ct.App. 1995), *trans. denied.* If the June 5, 2000 order were no longer appropriate, Sandra's remedy was to seek a modification of that order, not to defy it. *See Piercey v. Piercey,* 727 N.E.2d 26, 32 n. 2 (Ind.Ct. App.2000); *Williamson,* 722 N.E.2d at 866; *Hartzell,* 629 N.E.2d at 1295. The trial court acted within its discretion when it determined that Sandra willfully disobeyed the visitation order. We will not disturb its finding of contempt.

### II. Sanctions for Contempt

Sandra next asserts that the sanctions imposed for contempt of court were excessive and punitive in nature. It lies within the inherent power of the trial court to fashion an appropriate punishment for the disobedience of its order. *Williamson,* 722 N.E.2d at 867. Sanctions in a civil contempt proceeding may seek both to coerce behavior and to compensate an aggrieved party. *Crowl v. Berryhill,* 678 N.E.2d 828, 831 (Ind.Ct.App.1997). "In a civil contempt action the fine is to be paid to the aggrieved party, and imprisonment is for the purpose of coercing compliance with the order." *Duemling v. Fort Wayne Cmty. Concerts, Inc.,* 243 Ind. 521, 525, 188 N.E.2d 274, 276 (1963). Penalties designed to compel future compliance with a court order are considered to be coercive and avoidable through obedience. *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 827, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).

In this case, the trial court required Sandra to pay Mark's litigation expenses related to the emergency petition and to the contempt proceeding. In addition, Sandra was to pay Mark's expenses incurred in changing travel dates. These amounts are compensatory in nature, constituting monies spent by Mark in his unsuccessful attempt to secure parenting time and in his pursuit of the contempt petition. The trial award of those amounts was a "proper exercise of the court's inherent authority to compensate an aggrieved party." *Crowl,* 678 N.E.2d at 832.

The court also ordered Sandra to pay a $1,000.00 fine and imposed a two-year sentence, suspended on the condition that she comply with the general visitation order. The contempt fine neither coerces Sandra into compliance with a court order nor compensates Mark for losses sustained. Further, Sandra had no opportunity to purge herself of the fine. Under these circumstances, the fine is an inappropriate punishment for Sandra's past behavior and may not be imposed in this civil contempt proceeding. *See Bagwell,* 512 U.S. at 829, 837–38, 114 S.Ct. 2552; *see also Hancz v. City of South Bend,* 691 N.E.2d 1322, 1326 (Ind.Ct.App.1998) (holding that fine payable to the clerk of the court was improper punishment for a past act).

Sandra does not challenge the length of her imprisonment,[3] but she insists that the nature of the sanction is punitive and inappropriate in this civil action. Although incarceration undoubtedly has a punitive component, Sandra may avoid incarceration if she ensures that Mark receives parenting time under the

---

**3.** IND.CODE § 34–4–7–6, which limited punishments for contempt of court to a fine of $500.00 or imprisonment of no more than three months, or both, has been repealed. *In re Gardner,* 713 N.E.2d 346, 347 (Ind.Ct.App. 1999). In the absence of the statute, the power to punish contempt is limited by reasonableness. *Id.*

general visitation order. Thus, the effect of imprisonment is to coerce Sandra into assuring that Mark and his children maintain continuing contact with each other. The trial court was not precluded from ordering imprisonment as a condition for compliance with its order. *See, e.g., Williamson,* 722 N.E.2d at 867; *Moore v. Ferguson,* 680 N.E.2d 862, 865–66 (Ind.Ct. App.1997), *trans. denied.*

### III. Appellate Attorney Fees

Finally, Sandra asserts error in the award of appellate attorney fees to Mark for the defense of her former appeal. Specifically, she asserts that the trial court did not justify the award and that the court failed to consider that she did not perfect the appeal.

 The trial court is authorized to award a reasonable amount for the cost of maintaining or defending a proceeding related to marital dissolution, including reasonable appellate attorney fees. IND.CODE § 31–15–10–1; *Shively v. Shively,* 680 N.E.2d 877, 883 (Ind.Ct.App.1997). To determine a reasonable attorney fee award, the court considers the spouses' resources, their economic condition, and their ability to engage in gainful employment and earn an adequate income. *Piercey,* 727 N.E.2d at 31. The court enjoys broad discretion in awarding attorney fees, including prospective awards, and we reverse the court's decision only where an abuse of that discretion is established. *Kyle v. Kyle,* 582 N.E.2d 842, 850 (Ind.Ct.App. 1991), *trans. denied.* Any unearned advance fee, however, is to be refunded by an

attorney upon termination of representation. Ind. Professional Conduct Rule 1.16(d); *Kyle,* 582 N.E.2d at 850.

Without citation to evidence, Sandra complains that the court did not consider Mark's alleged superior financial situation. However, the trial court had reviewed the parents' economic data in the child-support hearing. We assume the court considered such information when it awarded fees. *See Piercey,* 727 N.E.2d at 31 (stating that the trial court need not give specific reasons for its award of attorney fees in dissolution cases).

Sandra also points out that, because she elected not to perfect the appeal, the fee award was unnecessary. Mark's attorney requested $2,500.00 in appellate attorney fees, "a standard amount within this community to defend an appeal." R. at 179. The trial court entered its order on October 26, 2000. One day earlier, on October 25, 2000, this court dismissed Sandra's appeal because she had failed to file a record of the proceedings. The trial court apparently received notice of the dismissal on October 31, 2000, five days after it had awarded appellate attorney fees.[4]

Although the trial court had discretion to award a fee prospectively, we cannot say that the court would have found $2,500.00 a reasonable fee if it had known that Sandra's appeal would be dismissed early in the appellate process. Moreover, in accordance with our Rules of Professional Conduct, a lawyer has an ethical duty to return any unearned fee. Under these unique circumstances, we remand for a determination of an appropriate fee.

---

4. The record shows the follow relevant events:

| | |
|---|---|
| 06/13/00 | Sandra filed a praecipe to appeal the child support and visitation orders |
| 07/19/00 | Mark filed a petition requesting $2,500.00 to defend the appeal |
| 10/25/00 | Court of Appeals dismissed appeal for Sandra's failure to file record of proceedings |
| 10/26/00 | Trial court awarded attorney fees |
| 10/30/00 | Notice of dismissal of appeal filed with trial court |

## CONCLUSION

In light of our disposition of the issues set forth above, we conclude that the trial court acted within its discretion when it found Sandra in contempt of court, when it ordered Sandra to pay Mark's litigation and out-of-pocket expenses, and when it ordered a suspended sentence. However, we note that the $1,000.00 fine is an inappropriate sanction for civil contempt. Therefore, we vacate the order requiring Sandra to pay a $1,000.00 fine and remand for consideration of appropriate appellate attorney fees. Judgment affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

BAILEY, J., and MATHIAS, J., concur.