**Devorah KOLBET, n/k/a Devorah Overbay, Appellant–Petitioner,**

v.

**Paul R. KOLBET, Appellee–Respondent.**

No. 71A03–0107–CV–219.

Court of Appeals of Indiana.

Jan. 15, 2002.

Mark S. Lenyo, South Bend, IN, Attorney for Appellant.

Frederick B. Ettl, South Bend, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Devorah Kolbet n/k/a Devorah Overbay ("Devorah") appeals the trial court's denial of her motion to set aside the court's previous orders, the trial court's assessment of

a fine against her, and the payment of attorney fees in favor of her former husband, Paul Kolbet ("Paul").

We affirm.

## ISSUES

1. Whether the trial court lacked subject matter jurisdiction.
2. Whether the trial court erroneously denied Devorah's motion.
3. Whether the trial court erroneously assessed fines and awarded attorney's fees.

## FACTS

Paul and Devorah were married on June 23, 1990, and produced one daughter, C.K., who was born in South Bend, Indiana. While living in South Bend, Paul was pursuing his doctorate in Theology at the University of Notre Dame; Devorah had a Master's Degree in Nursing. Paul and Devorah were separated in April 1999. On March 10, 2000, Devorah engaged counsel and filed her Verified Petition For Dissolution Of Marriage in the St. Joseph Circuit Court. In her verified petition Devorah alleged that immediately prior to the petition's filing, she had "resided in the State of Indiana for more than six (6) months and in St. Joseph County for more than three (3) months." (Devorah's App. 6).

On June 30, 2000, Devorah filed a petition seeking emergency temporary custody, support, and permission to take C.K. outside the jurisdiction of the St. Joseph Circuit Court. In her petition, Devorah alleged that in June 1999, Paul agreed to let her take C.K. to Chicago, where she resided and worked as a nurse. Devorah further alleged that Paul subsequently agreed to let her take C.K. with her to Portland, Oregon. Devorah also averred that when she brought C.K. back to Indiana for her baptism, Paul did not honor their agreement to return C.K. to Port-

land. As a result, she sought temporary custody and support. In response, Paul filed a motion for custody. The trial court set a provisional hearing for July 24, 2000.

Both Paul and Devorah appeared with counsel at the provisional hearing. The trial court ordered them to meet with Dr. Timothy A. Onkka ("Dr.Onkka"), a licensed psychologist. Dr. Onkka was also ordered to "to submit an emergency custody observation to assist the Court in deciding temporary custody pending a full custody evaluation." (Devorah's App. 67). The trial court set a further hearing for July 27, 2000.

As a result of Paul and Devorah's meeting with Dr. Onkka, a mediation agreement was prepared discussing the custody and care of their now four-year-old, C.K. Paul and Devorah agreed to share joint physical and legal custody of C.K as follows: (1) whichever parent C.K. was living with at the time was to be responsible for providing primary care; (2) Paul and Devorah were to split the costs of transferring C.K. between households and must provide 28 days notice in order to coordinate schedules; (3) C.K. was to spend the remainder of summer 2000 with Devorah in Portland; (4) Paul would spend Christmas, spring, and summer break with C.K.; and (5) when C.K. began kindergarten, she would spend the school year with Paul, subject to Devorah's visitation rights.

On July 27, 2000, Paul and Devorah executed a property settlement agreement that incorporated the mediation agreement. The property settlement agreement also divided the marital property and included provisions concerning the custody, visitation, and care of C.K. The settlement agreement included the following provisions:

9. *Voluntary Execution.* The parties hereto acknowledge that each is making

this Property Settlement Agreement on his or her own free will and volition in an effort to compromise the disputed issues between the parties and further acknowledge that no coercion or undue influence has been used against either party in the making of this Property Settlement Agreement.

10. *Entire Agreement.* Each party hereto acknowledges that no representations of any kind have been made to him or her as an inducement to enter into this Property Settlement Agreement, other than the representations set forth herein, and that this Agreement constitutes all of the terms of the contract between said parties, and acknowledges that each has been represented by counsel in the negotiation and making of this Agreement.

11. *Modification and Waiver.* A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement. Failure of either party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature.

\* \* \* \* \*

14. *Indemnification.* Each party agrees to indemnify and waive and hold the other harmless from all damages, losses, expenses (including attorney fees), costs and other fees incurred by reason of the other party's violation or breach of any of the terms and conditions of this Agreement.

15. *Representation by an Attorney.* Each party understands and agrees that they have been relying upon the advice of their own counsel, and neither counsel has made any representation or done any act which would lead the other party

to believe that the counsel has represented the interests of the other spouse in this action.

On the same day, the trial court held a final hearing. Paul and Devorah again appeared with counsel and presented their agreement. Devorah testified that she filed the petition for dissolution and that she had resided in Indiana for six months and St. Joseph County for three months immediately prior to filing her petition. Devorah also testified that she and Paul had entered into a property settlement agreement that divided the property in a fair and equitable manner. She also stated that she was satisfied and "fully intend[ed] to follow" the settlement agreement as it related to C.K. (Paul's App. 70). The trial court took the matter under advisement and reserved judgment pending the parties' "submission of [a] decree of dissolution, property settlement agreement, and Child Support Worksheets." (Devorah's App. 67).

On July 28, 2000, the trial court entered a final Decree Of Dissolution Of Marriage. The trial court found the property settlement agreement executed by Paul and Devorah "to be fair and equitable to each of the parties and is, hereby, approved." (Paul's App. 46). Both the property settlement agreement and the mediation agreement were incorporated into the trial court's judgment.

After the hearing, C.K. returned to Portland with Devorah. On September 14, 2000, Paul sought to arrange for his visitation with C.K. and e-mailed Devorah the dates of his Christmas break. On October 31, 2000, he mailed a letter to Devorah "formally requesting that [they] purchase the plane tickets for the break under the terms of the mediation agreement." (Paul's App. 165). On November 22, 2000, Paul's attorney sent a letter to Devorah's attorney seeking written confirmation that

Devorah would honor the terms of the trial court's order. On December 20, 2000, Paul filed his Verified Application For Rule To Show Cause because Devorah had "failed to honor the order of Christmas visitation contained in the Property Settlement Agreement and Decree of Dissolution...." (Paul's App. 163). On December 23, 2000, Devorah was served with the trial court's order to appear. The trial court set a hearing for January 16, 2001, which was later continued to January 24, 2001.

On January 24, 2001, Paul appeared with counsel and Devorah appeared by her counsel. Devorah's counsel requested a continuance, and the trial court reset the hearing for January 31, 2001.

Meanwhile, on January 30, 2001, Devorah filed a petition to establish jurisdiction under the Uniform Child Custody Jurisdiction Act in the Circuit Court of the State of Oregon for the County of Washington. In her petition, Devorah requested the Oregon trial court to assume jurisdiction to make a subsequent child custody determination. Devorah stated that the Indiana trial court should decline jurisdiction and vacate its original order because she was "not in the State of Indiana for the requisite period of time prior to the commencement of the earlier dissolution proceeding." (Devorah's App. 32). In addition, Devorah alleged the following:

> Through fear, coercion and intimidation, the petitioner acquiesced to jurisdiction in the State of Indiana only to be able to leave that state with her child and to preserve her home and employment and the child's schooling in the State of Oregon.

(Devorah's App. 32). Devorah also stated that Oregon was the home state of both herself and C.K. "on the date of commencement of the proceedings to dissolve the marriage of the parties." (Devorah's App. 30). Further, Devorah argued that

Oregon is the more appropriate forum because she and C.K. have significant connections with the state, as she is now remarried, permanently employed, and has C.K. enrolled in school.

On January 31, 2001, the Indiana trial court held a hearing on Paul's motion for rule to show cause. Paul appeared in person with his counsel and Devorah appeared by counsel. The trial court was informed of the Oregon proceedings and ordered the parties to submit authority on the issue of subject matter jurisdiction. Further proceedings were continued until the Indiana trial court could confer with the Oregon court.

On February 7, 2001, Paul filed his Response To Petition To Establish Jurisdiction In Oregon. On February 8, 2001 the Honorable David Chapleau, magistrate judge in the St. Joseph Circuit Court in Indiana, had a recorded telephonic conference with the Honorable Steven L. Price, circuit court judge for the State of Oregon, Washington County. Judge Chapleau indicated that he thought Indiana had subject matter jurisdiction because Devorah was the person who filed the initial petition, and Paul was still a resident of Indiana. In a subsequent letter, Judge Price ruled that Oregon law required him to defer to Indiana for a determination of whether it continued to have jurisdiction.

On February 22, 2001, Devorah filed a motion in the Indiana trial court requesting it to "vacate its prior order of custody, visitation and support...." (Paul's App. 94). She alleged that the trial court did not have jurisdiction because of a mistake, surprise, excusable neglect, fraud, coercion, and duress.

Because Paul did not receive visitation during his spring break, Paul filed his second Verified Application For Rule To Show Cause with a request for attorney

fees. The trial court issued an order to Devorah's Indiana attorney to appear on March 30, 2001. On that date, Devorah appeared by counsel, and a hearing on Devorah's motion to vacate the trial court's custody order was set for April 16, 2001. A hearing on Devorah's motion was eventually held before the Honorable Terry A. Crone of the St. Joseph Circuit Court. On May 1, 2001, Judge Crone denied Devorah's petition, and set a hearing on Paul's remaining motions for May 10, 2001.

On May 10, 2001, Paul appeared with counsel and Devorah appeared by counsel. The trial court found Devorah to be in violation of the court's original order regarding visitation "and to be in contempt of Court by reason thereof." (Paul's App. 175). The trial court again ordered Paul's summer visitation to begin on May 20, 2001, and reset the hearing on fees to a later date.

On May 21, 2001, Paul filed his third Verified Application For Rule To Show Cause with a request for attorney fees. Paul alleged that he contacted Devorah by e-mail on May 11, 2001 to arrange C.K.'s transportation to Indiana, but that Devorah did not respond. The trial court issued an order for Deborah to appear on May 29, 2001. On May 29, 2001, Paul appeared with his counsel and Devorah by her counsel. The trial court again found Devorah to be in contempt of the court's original order. In addition, the trial court found that Devorah had failed to appear in person and, pursuant to its order, issued a body attachment order with a penal bond set in the amount of $5,000. Further, the trial court ordered that Devorah would incur a fine of $200 per day until C.K. was turned over to Paul.

On June 13, 2001, Judge Price, at Paul's request, issued an order to Sheriff James Spinden of Washington County Oregon to take custody of C.K. However, neither Devorah nor C.K. were located on that day. Subsequently, on June 18, 2001, Devorah was indicted by the Grand Jury of Washington County, Oregon for custodial interference in the second degree as a class C felony.

Meanwhile, back in Indiana, Paul's attorney filed a Motion For Supplemental Attorney's Fees in the amount of $7,160. On June 27, 2001, Paul filed a motion for compensatory visitation and modification of custody. Paul argued that the events of the past year warranted additional visitation time and that he should be awarded exclusive physical custody of C.K. On June 29, 2001, Devorah filed a motion for a change of judge. On that same day, the trial court held a hearing on Paul's motion for rule to show cause, petition for compensatory visitation and modification, and Devorah's motion for change of judge. Paul appeared with counsel and Devorah appeared by counsel. The trial court found the following:

> Court finds that the wife has incurred civil penalties pursuant to order previously entered on rule to show cause in the amount of $5,800 related to failure to turn child over to husband pursuant to Court's order of 5–29–01 and has caused reasonably necessary attorney fees related to said matter in the amount of $7,160. Husband shall have and recover of and from the wife the sum of $12,960.

(Paul's App. 195). The trial court then granted Devorah's motion for change of judge.

On September 17, 2001, Devorah was convicted of custodial interference as a misdemeanor and sentenced to one year of formal probation in Washington County, Oregon. A condition of her probation is to comply with any court orders concerning C.K.

## DECISION

### 1. Subject Matter Jurisdiction

Devorah appeals the trial court's denial of her motion to vacate the trial court's Decree of Dissolution. Specifically, she argues that the trial court lacked subject matter jurisdiction because she was not a resident of Indiana.

Devorah asks this court to apply the Uniform Child Custody Jurisdiction Law ("UCCJL") to find that the Oregon court has jurisdiction. Devorah asserts that under Ind.Code § 31–17–3–3, Oregon was C.K.'s home state prior to the petition for dissolution being filed and that both she and C.K. have significant connections with Oregon. However, we cannot agree with this interpretation.

The purpose and construction of the UCCJL is (1) to avoid jurisdictional competition with other state courts dealing with child custody matters; (2) to promote cooperation among courts of other states; (3) to assure that child custody litigation takes place in the state with which the child and his family have the closest connection; (4) to discourage continuing child custody controversies; (5) to deter child abductions by parents hoping to gain custody awards; (6) to avoid the re-litigation of out-of-state child custody disputes in Indiana courts; (7) to facilitate enforcement of child custody decrees from other states; and (8) to promote the exchange of information and assistance between various state courts concerning the same child. Ind.Code § 31–17–3–1.

■ As a result, the statute operates to restrict the power of courts to hear custody cases. *Stephens v. Stephens*, 646 N.E.2d 682 (Ind.Ct.App.1995). "Under the UCCJL, an Indiana court has an affirmative duty to question its jurisdiction when it becomes aware of an interstate dimension in a child custody dispute." *Id.*

at 685. If modification of a custody order from another state is sought in Indiana, the Indiana court must first establish (1) that the originating court does not now have jurisdiction, or (2) it has declined jurisdiction. Ind.Code § 31–17–3–14; *Wilcox v. Wilcox*, 635 N.E.2d 1131 (Ind.Ct. App.1994). The "court which entered the original child custody decree has continuing exclusive jurisdiction until the children and all the parties have left the state." *Id.* at 1134.

■ In this case, the original court was in Indiana, and Paul still resides within this state. Therefore, the St. Joseph Circuit Court still has jurisdiction. It was the Oregon trial court that was obligated to conduct the jurisdictional analysis. Judge Price did so and concluded that Oregon must defer to Indiana. Further, we note that allowing Devorah to pursue her petition in Oregon would subvert the very purpose of the UCCJL. As we noted above, the UCCJL's purpose is, among other things, to avoid jurisdictional conflicts and promote cooperation between the states. Here, Devorah (1) initiated the dissolution proceedings in Indiana; (2) personally appeared in the Indiana court; (3) received the benefit of the Indiana court's time and effort; and (4) testified that she voluntarily entered into and was satisfied with the property settlement agreement while being represented by counsel. Devorah, now unhappy with the custody order issued in Indiana, has deliberately refused to comply with the Indiana trial court's order, and she has attempted to create a jurisdictional conflict by filing a petition challenging the validity of Indiana's jurisdiction or, alternatively, to modify the custody order in an Oregon court—all of which has led to her conviction of interference with custody in Oregon. Such conduct is not permitted under the UCCJL. *See Christensen v. Christen-*

*sen,* 752 N.E.2d 179, (Ind.Ct.App.2001) (person who voluntarily and affirmatively engages an Indiana court to determine custody and expressly consents to the court's authority waives any jurisdictional claim about that case).

## 2. *Motion To Vacate Orders*

■ When reviewing a trial court's denial of a motion to vacate its judgment, we review for an abuse of discretion. *In re Marriage of Bates,* 474 N.E.2d 140 (Ind. Ct.App.1985). "An abuse of discretion occurs where the trial court's ruling is clearly against the logic and effect of the facts and inferences supporting the judgment." *Id.* at 142.

■ In this case, we find that the trial court did not abuse its discretion when it denied Devorah's motion to vacate its order. As we have mentioned, Devorah appeared in person before the St. Joseph Circuit Court, was represented by counsel, and testified that she voluntarily entered into the property settlement agreement and was satisfied with the custody arrangement. In an attempt to subvert the trial court's original order, Devorah then filed a subsequent motion to modify the Indiana trial court's custody order in an Oregon court. As a result, the trial court properly denied her motion.

## 3. *Attorney Fees and Fines*

Devorah appeals the trial court's assessment of a fine in the amount $5,800 and attorney fees totaling $7,160. Specifically, she argues that her motion for change of judge should have been considered prior to Paul's request for attorney fees, and that there was insufficient evidence to support the fine and attorney fees.

Ind. Trial Rule 76(B) reads as follows:

After a final decree is entered in a dissolution of marriage case, a party may take only one change of judge in connection with petitions to modify that decree, regardless of the number of times new petitions are filed.

Further, "[I]t is well settled that upon filing of a motion for change of judge under T.R. 76, the trial court is divested of jurisdiction except to grant the change of venue or act on emergency matters." *In re Adoption of I.K.E.W.,* 724 N.E.2d 245, 251 n. 9 (Ind.Ct.App.2000). However, a pending civil contempt proceeding is not a civil action so as to contemplate a change of judge. *Linton v. Linton,* 166 Ind.App. 409, 339 N.E.2d 96 (1975).

■ In this case, Devorah filed her motion for change of judge on June 29, 2001. However, the hearing scheduled on that date was on a rule to show cause why Devorah should not be punished for her refusal to comply with the trial court's order. As such, the trial court did not err by considering the fine and attorney fees associated with Devorah's contempt before granting her motion for change of judge.

■ We now consider whether there was sufficient evidence to support the fine and attorney fees.

Indirect contempt involves the willful disobedience of any lawfully entered court order of which the offender has notice. The determination of whether a party is in contempt of court is a matter entrusted to the trial court's sound discretion, and we reverse that determination only for an abuse of discretion. A court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. When reviewing a contempt order, we neither reweigh evidence nor judge witness credibility. Instead, we consider only the evidence and reasonable inferences drawn therefrom that support the trial court's judgment, and we reverse the trial court's con-

tempt judgment only if there is no evidence to support it.

*MacIntosh v. MacIntosh*, 749 N.E.2d 626, 629 (Ind.Ct.App.2001), *trans. denied.* (citations omitted).

In addition, the trial court has the inherent power to fashion appropriate punishment for the disobedience of its orders. *Id.* The punishment "may seek both to coerce behavior and to compensate an aggrieved party." *Id.* at 631. "Penalties designed to compel future compliance with a court order are considered to be coercive and avoidable through obedience." *Id.*

Here, we find ample evidence to support the court's finding that Devorah was in contempt. At no time since the trial court entered its Decree of Dissolution on July 28, 2000 has Devorah complied with the visitation provisions. The mediation agreement that was incorporated into the decree explicitly stated that Devorah was to allow C.K. to visit Paul during his Christmas, spring, and summer breaks. Further, Devorah's filing of the petition in Oregon is additional evidence of her intention not to comply with the Indiana trial court's order. Concerning the fine of $5,800, the trial court imposed this fine on May 29, 2001 when Devorah failed to transfer C.K. to Paul on May 20, 2001. The trial court stated that Devorah was to pay "$200 per day until child is turned over to the husband." (Paul's App. 183). Devorah had notice of the proceedings, was represented by counsel, and could have avoided the penalty by complying with the trial court's order. As a result, we find sufficient evidence to support the fine.

Concerning the trial court's award of attorney fees, we find that the trial court did not abuse its discretion. Paul's request for attorney fees was made when he sought the court's assistance in gaining

Devorah's compliance with visitation. As such, the award of attorney fees was made to compensate Paul for the cost he incurred associated with the contempt proceedings. *MacIntosh*, 749 N.E.2d at 626. Further, in the settlement agreement, Devorah agreed to indemnify Paul for attorney fees incurred as a result of her breached of the agreement. Therefore, because the trial court found that Devorah violated the terms of the agreement, there is sufficient evidence to support the trial court's award of attorney fees.

Affirmed.

SHARPNACK, J., and BAILEY, J., concur.