## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 10 2015, 10:26 am

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEYS FOR APPELLANT

Brian L. Ciyou
Lori B. Schmeltzer
Ciyou & Dixon. P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Mary Beth Mock
Madison, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

In Re the Paternity of V.A.,

A Minor Child

Robert Anderson (Father),

*Appellant-Petitioner,*

v.

Billy Jo Youngblood (Mother),

*Appellee-Respondent*

February 10, 2015

Court of Appeals Cause No. 39A04-1408-JP-375

Appeal from the Jefferson Circuit Court

The Honorable Ted R. Todd, Judge

Cause No. 39C01-1108-JP-28

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Robert Steven Anderson (Father), appeals the trial court's Order on Remand, with respect to issues of custody, parenting time, and child support in his proceedings against Appellee-Respondent, Billy Jo Youngblood (Mother).

We affirm in part and remand.

## ISSUES

Father raises three issues on appeal, which we restate as follows:

(1) Whether the trial court erred by failing to make a determination of legal custody;

(2) Whether the trial court abused its discretion by declining to impose any sanctions after finding Mother in contempt; and

(3) Whether the trial court abused its discretion in its calculation of Father's child support obligation.

## FACTS AND PROCEDURAL HISTORY

Father and Mother have one child together, Vernon-William Ray-Steven Anderson (Child), born on June 30, 2003. Within a few days of the Child's birth, Father established his paternity by executing a paternity affidavit. Father and Mother never married, but they lived together in Madison, Jefferson County, Indiana, for the first eight years of the Child's life. Mother, who has three other children from different relationships, stayed home to care for the children, whereas Father periodically worked and also spent a substantial

amount of time in Bloomington, Indiana, in pursuit of his undergraduate degree at Indiana University.

[4] The parties' nine-year relationship ended on July 26, 2011, when Mother moved out of the house, taking the Child with her. Soon after she moved into her new apartment, Mother obtained a protective order against Father. According to Mother, Father had started physically abusing her in January of 2011 and began physically abusing the Child and her other son in May of 2011.

[5] On August 3, 2011, Father filed a Petition to Establish Paternity, and for Custody, Parenting Time, and Support in the Jefferson County Circuit Court. In his Petition, Father requested that he be awarded sole custody of the Child. At an emergency hearing on August 12, 2011, the trial court determined that the Child should remain in Mother's custody until a hearing could be held on all of the issues.

[6] After she moved out, Mother did not permit Father to see the Child for nearly five months. On December 19, 2011, the trial court adopted the parties' agreed provisional order (Parenting Time Order), granting Father supervised parenting time once a week for no more than one and one-half hours. Father was also permitted to have a telephone conversation with the Child every Tuesday and Thursday evening. After several supervised visits, Father was gradually afforded increased and unsupervised parenting time.

[7] On March 7, 2012, Father filed an Affidavit in Support of Rule to Show Cause (Contempt Petition), alleging Mother to be in contempt of the Parenting Time

Order because she denied his right to have a telephone conversation with the Child on March 1, 2012. The next day, the parties submitted an agreed provisional order for child support. In accordance therewith, the trial court ordered Father to pay $40.00 per week during the pendency of the proceedings.

[8] On May 21 and June 19, 2012, the trial court conducted a hearing on custody, support, parenting time, and Father's Contempt Petition. On August 24, 2012, the trial court issued its Order. Regarding Father's petition to establish custody and parenting time, the trial court found that it would be in the Child's "best interest to be in the custody of his [M]other, with his [F]ather exercising parenting time pursuant to the Indiana Parenting Time Guidelines." (Appellant's App. p. 39). As to child support, the trial court found Father to be "underemployed" and increased his weekly support obligation from $40.00 to $60.00, retroactive to July 20, 2012. (Appellant's App. p. 40). The Order did not address Father's Contempt Petition.

[9] On September 12, 2012, Father appealed the trial court's Order, asserting that the trial court failed to rule on the issue of legal custody and on his Contempt Petition. Father also challenged the trial court's determination of child support. During the pendency of that appeal, on November 14, 2012, Father filed a motion for a change of judge, a verified petition to modify physical and legal custody and child support, and a verified petition for contempt. Two days later, his motion for a change of judge was granted, and on November 30, 2012, the Ripley County Superior Court (Ripley Court) assumed jurisdiction. On

February 27, 2013, the Ripley Court dismissed the remainder of Father's outstanding petitions, citing lack of jurisdiction due to the pending appeal.

[10] On May 10, 2013, our court issued a memorandum decision, partially affirming the trial court's Order and remanding with specific instructions. *In re Paternity of V.A.*, No. 39A01-1209-JP-413 (Ind. Ct. App. May 10, 2013). First, finding that "the issue of legal custody was placed squarely before the trial court," we directed the trial court to make an express award of legal custody. *Id*. slip op. at 9. Second, we instructed the court to specifically address Father's Contempt Petition. Lastly, we asked the trial court to clarify its child support award "by showing either that the award complied with [Indiana's] Child Support Guidelines or that the award deviated from the guidelines and explaining the deviation." *Id*. slip op. at 10.

[11] Following our decision, a dispute arose regarding whether the trial court or the Ripley Court should rule on the remanded issues. Pursuant to Trial Rule 63(A), the Ripley Court determined that the trial court was required to rule on the remanded matters. Father disagreed and appealed the issue to our court. On May 30, 2014, we affirmed the Ripley Court, finding that the trial court which heard the evidence should rule on the remanded issues. *In re Paternity of V.A.*, 10 N.E.3d 61, 65 (Ind. Ct. App. 2014).

[12] On July 21, 2014, the trial court issued its Order on Remand. In response to our instructions to expressly decide the Child's legal custody, the trial court stated that its "position on that issue remains unchanged." (Appellant's App. p.

31).  Additionally, the trial court found Mother in contempt for failing to abide by the Parenting Time Order but declined to impose any sanctions as it "would only cause unnecessary friction between the parties in their attempt to work together to be good parents to the Child."  (Appellant's App. p. 32).  Finally, the trial court recalculated Father's child support obligation and ordered him to pay $95.00 per week, retroactive to July 20, 2012.

[13]  Father now appeals.  Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I.  *Standard of Review*

[14]  Where a trial court enters specific findings of fact and conclusions thereon, we apply a long-settled, two-tiered standard of review.  *See* Ind. Trial Rule 52(A).  First, we must consider whether the evidence supports the findings; second, we determine whether those findings support the judgment.  *Tompa v. Tompa*, 867 N.E.2d 158, 163 (Ind. Ct. App. 2007).  We will not set aside the trial court's findings or judgment unless clearly erroneous.  *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011).  Findings are clearly erroneous if there are no facts in the record to support them—either directly or by inference.  *Id.*  A judgment is clearly erroneous if the trial court relies on an incorrect legal standard.  *Dedek v. Dedek*, 851 N.E.2d 1048, 1050 (Ind. Ct. App. 2006).  On appeal, we do not reweigh evidence or assess the credibility of witnesses; rather, we consider the evidence most favorable to the trial court's determination, drawing all reasonable inferences in favor of the judgment.  *Best*, 941 N.E.2d at 502.

Our review is further guided by the longstanding principle that trial courts are entitled to a "particularly high degree of discretion" in the family law setting. *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005). Thus, regardless of "[w]hether the standard of review is phrased as 'abuse of discretion' or 'clear error,'" this deference is due because trial courts are generally "in the best position to judge the facts, to get a feel for the family dynamics, to get a sense of the parents and their relationship with their children—the kind of qualities that appellate courts would be in a difficult position to asses." *Id.* We also recognize that "appeals that change the results below are especially disruptive in the family law setting." *Id.*

## II. *Legal Custody*

In its Order, the trial court found that it would serve the Child's "best interest to be in the custody of his [M]other." (Appellant's App. p. 39). Because the Child's *legal* custody was a "substantive issue[] addressed by the parties at the hearing[,]" we remanded "for the trial court to expressly address the issue of legal custody." *In re Paternity of V.A.*, No. 39A01-1209-JP-413, slip op. at 8-9. In its Order on Remand, the trial court stated that its "position on that issue remains unchanged." (Appellant's App. p. 31). The trial court specifically noted that it was "puzzled by the . . . remand" because the Order "contained three paragraphs setting forth reasons why the [trial] [c]ourt concluded that it is in the Child's best interests to be in the custody of the [M]other." (Appellant's App. p. 31).

[17]   Father now claims that the trial court erred because it did not make a specific award of the Child's legal custody. Mother concedes that the trial court erroneously failed to rule on this matter. Even though the parties agree that another remand is necessary for a determination of legal custody, we will briefly clarify our instructions in order to ensure that the trial court will not again be "puzzled" by our remand. (Appellant's App. p. 31).

[18]   As our court has previously determined, "[p]hysical custody and legal custody are not equivalent." *Finnerty v. Clutter*, 917 N.E.2d 154, 156 (Ind. Ct. App. 2009). Physical custody concerns "the physical care and supervision of a child." *Id.* at 156 n.1 (quoting Ind. Code § 31-21-2-16). Thus, the primary physical custodian provides the child's primary residence and is "the person who cooks his meals, puts him to bed, and cares for him on a daily basis." *Lamb v. Wenning*, 600 N.E.2d 96, 98 (Ind. 1992). On the other hand, legal custody entails the right to make important decisions about "the child's upbringing, including the child's education, health care, and religious training." I.C. § 31-17-2-17(a); *see Finnerty*, 917 N.E.2d at 156 (noting that the "custodian" referenced in Indiana Code section 31-17-2-17 means "the legal custodian, not the physical custodian"). Although both require a consideration of the child's best interest, physical custody and legal custody are *separate* determinations. *See* I.C. §§ 31-17-2-8; -13; -15. An award of either joint or sole legal custody does not necessarily require a corresponding award of joint or primary physical custody and vice versa. *See Gonzalez v. Gonzalez*, 893 N.E.2d 333, 335 (Ind. Ct. App. 2008).

[19] In our prior decision, we concluded that the trial court had only ruled on the Child's physical custody. In large part, this is because the trial court immediately followed its decision to place the Child in Mother's custody with an explanation of Father's parenting time privileges—*i.e.*, the time that the Child will *physically* spend in Father's care. Furthermore, no findings were issued as to the parties' rights to make decisions about the Child's upbringing. In its Order on Remand, the trial court unequivocally stated that it did not alter its custody ruling, so we again remand this case with instructions to make explicit and distinct determinations of the Child's legal *and* physical custody.

### III. *Sanctions for Contempt*

[20] Next, Father claims that the trial court erred in several respects regarding its finding of contempt based on Mother's failure "to abide by the letter and spirit of the [Parenting Time Order]." (Appellant's #375 App. p. 33). A trial court may hold a party in contempt upon a finding that the party willfully disobeyed a court order. *In re Paternity of P.B.*, 932 N.E.2d 712, 722 (Ind. Ct. App. 2010). A trial court's determination of contempt will be reversed only for an abuse of discretion. *Id.* An abuse of discretion occurs if the trial court's decision is contrary to the logic and effect of the facts and circumstances before it. *Bessolo v. Rosario*, 966 N.E.2d 725, 730 (Ind. Ct. App. 2012), *trans. denied*.

[21] Here, in its Order on Remand, the trial court specifically found that

> there was a period of time between [the Parenting Time Order] of December 19, 2011 and the dates of the hearing when the matter of Father's parenting time and communication with the Child was at

issue.

> At the conclusion of the hearing[,] [the trial court] made the following observation on the record, "I'm pleased with the progress we have made so far in this case from where we started[."] In view of that progress, the [c]ourt finds punishing Mother for contempt either then or at this time[] would only cause unnecessary friction between the parties in their attempt to work together to be good parents to the Child. It would not be in the Child's best interest for the [c]ourt to so do.

(Appellant's App. pp. 31-32).

[22] Father first posits that the trial court erroneously "discussed an entirely different issue than the interference with [his] telephone contact as per the [Parenting Time Order], and instead based its decision that Mother was in contempt on the fact that she denied Father parenting time and contact *before* the [Parenting Time Order] of December 19, 2011." (Appellant's Br. pp. 18-19). We disagree. The trial court specifically found that the interference with Father's parenting time occurred *between* the December 29, 2011 Parenting Time Order and the hearing on May 21 and June 19, 2012. Although Father filed several contempt citations throughout this case, only his March 7, 2011 Contempt Petition was before the court at the hearing. In that Petition, Father cited a single denied phone call as ground for holding Mother in contempt. However, evidence elicited during the hearing also revealed that there were two or three additional missed phone calls during that period of time. Thus, it is evident that the trial court found Mother to be in contempt based upon her interference with

parent/child communications between the time of the Parenting Time Order and the hearing. Thus, we find that Father has not presented a basis for error.

[23] Father next asserts that "it is unclear how the trial court could base a ruling as to the parties' continued co-parenting efforts and progress 'at this time,' since it had not presided over the case" since November of 2012. (Appellant's Br. p. 19). Again, we find that Father's argument reflects a misunderstanding of the Order on Remand. We do not find that the trial court's reference to "at this time" is meant to suggest that the trial court has first-hand knowledge about the current state of the parties' co-parenting relationship. Rather, the trial court acknowledged that, at the time of the hearing, the parties had made significant progress in their ability to cooperate. In fact, the evidence reveals that they had mutually agreed that Father could provide the Child with a cellular phone in order to resolve the communication issues. Because the trial court would not have disturbed the parties' volatile relationship by imposing sanctions at that time, it had no reason to do so in its Order on Remand. We find no error.

[24] Finally, Father argues that because the trial court found Mother to be in contempt, it erred by "fail[ing] to issue any sanctions, despite that [the] same is *required* by statute upon a finding of a willful violation without just cause." (Appellant's Br. p. 20). He relies on the Parenting Time Statute, which provides, in part:

> A court that finds an intentional violation without justifiable cause by a custodial parent of an injunction or a temporary restraining order issued under this chapter . . . :
> (1) shall find the custodial parent in contempt of court;

(2) shall order the exercise of parenting time that was not exercised due to the violation under this section at a time the court considers compatible with the schedules of the noncustodial parent and the child;
 (3) may order payment by the custodial parent of reasonable attorney's fees, costs, and expenses to the noncustodial parent; and
(4) may order the custodial parent to perform community restitution or service without compensation in a manner specified by the court.

I.C. § 31-17-4-8. Based on Mother's undisputed violation of the Parenting Time Order, Father asserts that this statute mandates a finding of contempt and, at minimum, an order permitting him to exercise his missed parenting time. On the other hand, Mother claims that this provision is inapposite because there was no injunction or restraining order in place.[1] We agree with Mother.

[25] Pursuant to the Parenting Time Statute, when a non-custodial parent is barred from exercising his parenting time, he may file "an application for an injunction against the custodial parent under" Indiana Trial Rule 65. I.C. § 31-17-4-4. After an injunction is sought, the trial court may grant a temporary restraining order to "restrain[] the custodial parent from further violation of the parenting

---

[1] Mother also asserts that Father's reliance on Indiana Code section 31-17-4-8 is misplaced because he alleged only a missed phone call, not face-to-face parenting time. We disagree with Mother's implication that telephone communication is not a form of parenting time. To the contrary, the Parenting Time Guidelines emphasize that "[r]egular phone contact is an important tool in maintaining a parent/child relationship[,]" and it is a violation of the Guidelines to block these communications. Ind. Parenting Time Guideline § 1(A)(7).

time order." I.C. § 31-17-4-5(a). Thereafter, any violations will necessarily result in a finding of contempt and require an order permitting the non-custodial parent to exercise any missed parenting time. I.C. § 31-17-4-8(2).

[26] In this case, although Father argues that his Contempt Petition is equivalent to an injunction, it is clear that no injunction or restraining order was ever issued under Trial Rule 65. As such, the Parenting Time Statute does not govern the instant contempt action. Nevertheless, "[t]he remedies in [the Parenting Time Statute] are in addition to and do not limit other civil or criminal remedies available to the noncustodial parent." I.C. § 31-17-4-9. By filing the Contempt Petition rather than seeking an injunction, Father availed himself of one such "other civil" remedy. Thus, we will look to the general rules of civil contempt. *See* I.C. ch. 34-47-3.

[27] In a civil contempt action, "[i]t lies within the inherent power of the trial court to fashion an appropriate punishment for the disobedience of its order." *MacIntosh v. MacIntosh*, 749 N.E.2d 626, 631 (Ind. Ct. App. 2001), *trans. denied*. The trial court may craft sanctions designed to either coerce behavior or to compensate an aggrieved party, or both. *Id. See* I.C. § 34-47-3-6(c) (giving the trial court discretion to impose a fine, imprisonment, or both). Accordingly, where a trial court finds that a party's "actions fall short of necessitating contempt sanctions[,]" it may exercise its discretion to withhold the same. *Van Wieren v. Van Wieren*, 858 N.E.2d 216, 223 (Ind. Ct. App. 2006). We therefore find that the trial court did not abuse its discretion in declining to impose

sanctions for Mother's contemptuous behavior in light of the improvement in the parties' co-parenting relationship at the time of the hearing.

## IV. *Child Support Calculation*

[28] Finally, Father claims that the trial court abused its discretion by ordering him to pay $95.00 per week in child support. Decisions relating to child support are reserved for the sound discretion of the trial court and are subject to reversal only for an abuse of that discretion, or if a determination is contrary to law. *Id.* Child support orders are governed by the Indiana Child Support Rules and Guidelines (Support Guidelines). *Scott v. Scott*, 668 N.E.2d 691, 695 (Ind. Ct. App. 1996). The purpose of the Support Guidelines is "to provide the children as closely as possible with the same standard of living they would have enjoyed" had the parents remained together. *Payton v. Payton*, 847 N.E.2d 251, 253 (Ind. Ct. App. 2006). There is a rebuttable presumption that the amount of child support calculated under the Support Guidelines is correct. *Id.* However, trial courts "are advised to avoid the pitfall of blind adherence to the computation of support without giving careful consideration to the variables that require changing the result in order to do justice." *Glover v. Torrence*, 723 N.E.2d 924, 936 (Ind. Ct. App. 2000).

[29] In its Order, the trial court ordered Father to pay $60.00 per week in child support. Except to say that Father "is underemployed[,]" the trial court did not include any findings to indicate how it contemplated the amount. (Appellant's App. p. 40). On remand, we instructed the trial court to clarify its child support award "by showing either that the award complied with the Child Support

Guidelines or that the award deviated from the guidelines and explaining the deviation." *In re Paternity of V.A.*, No. 39A01-1209-JP-413, slip op. at 10. In its Order on Remand, the trial court utilized the Support Guidelines and recalculated Father's presumptive weekly obligation at $110. However, because the trial court found that Father provides all transportation for parenting time, it reduced the amount to $95.00 per week.

[30]    Father contends that the trial court abused its discretion by increasing the amount of the support award. In particular, he argues that our remand instructions did not permit "the trial court to change or amend its determination, just to substantiate the factual basis it relied upon in arriving at the determination, either through a Child Support Worksheet or findings." (Appellant's Br. p. 24). He seeks a remand with specific instructions for the trial court to "issue findings to support its prior award of $60.00 per week." (Appellant's Br. pp. 25-26).

[31]    Mother notes that the issue of whether a trial court may recalculate an initial support order on remand appears to be a matter of first impression. However, a review of the relevant case law reveals many instances in which the appellate court issued specific remand instructions for the trial court to recalculate an erroneous child support award. *See Apter v. Ross*, 781 N.E.2d 744, 766 (Ind. Ct. App. 2003), *trans. denied*. Accordingly, we are faced with the question of whether the trial court was permitted to recalculate Father's support obligation even though our remand instructions did not explicitly authorize it to do so. We hold that it was.

[32] It is well established that "trial courts are required to make support orders in compliance with the guidelines and to spell out the reasons for any support orders which deviate from the guideline results." *Cobb v. Cobb*, 588 N.E.2d 571, 574 (Ind. Ct. App. 1992). Contrary to the initial Order, from which we could discern no basis for the trial court's support award, the Order on Remand includes a child support worksheet—completed by the trial court—to justify a $110 award, as well as an explanation that the final award should actually be reduced by $15.00 because Father provides all of the Child's transportation for parenting time.

[33] Ultimately, our remand instructions were intended to elicit a basis from the trial court from which we could determine whether its support order was in accordance with the law. Although a recalculation was not explicitly part of our instructions, it effectuated the purpose of our remand and was therefore not improper. Moreover, we find that the trial court's recalculation served the interests of judicial efficiency. If, on remand, a trial court determines that its initial figure does not comport with the Support Guidelines or that there is no justification for deviating, but nevertheless attempts to validate the award with findings that have no support in the record, the matter would inevitably be re-appealed and subsequently re-remanded. Because we now have a support order that we are capable of reviewing, we decline to find that the trial court erred.

Nonetheless, Father insists that the trial court's recalculation actually amounts to an impermissible *sua sponte* retroactive modification of support. In general, a trial court may modify a support order if there has been a substantial change in

circumstances or if—at least twelve months after the initial order was issued— the amount differs by more than 20% from what would be presumed under the Support Guidelines. I.C. § 31-13-8-1(b). Father is correct that there was no petition to modify child support before the court, but we cannot agree that the trial court's recalculation amounted to such a modification; it was simply a correction. Until the amount of an initial support order has been definitively established, there is nothing to modify. Here, the initial support order had been remanded and, as such, was still tentative.

[34] Lastly, Father disputes the trial court's calculation of his weekly gross income at $962 per week and Mother's at $356. In arriving at these figures, the trial court noted that neither party submitted a child support worksheet. The Support Guidelines stipulate that "[i]n all cases, a copy of the worksheet . . . shall be completed and filed with the court when the court is asked to order support. . . . Worksheets shall be signed by both parties, not their counsel, under penalties for perjury." Ind. Child Support Guideline 3(B)(1). However, when a party fails to file a worksheet, he is precluded from challenging the

income figures arrived at by the trial court. *Dye v. Young*, 655 N.E.2d 549, 550-51 (Ind. Ct. App. 1995).[2]

[35] Without worksheets, the trial court instead relied on the evidence adduced at the hearing to calculate the parties' income. *See* Child Supp. G. 3(A)(1)-(3). Not only did Father fail to remit a child support worksheet, he was less than forthcoming regarding his finances. He testified that his annual income for 2011 was less than $8,000, and his pay stubs for the first four months of 2012 revealed total earnings of $1,382. Yet, Father was making monthly mortgage payments of $2,600, and he estimated that at the time of the hearing, he was earning approximately $1,500 per week. He also testified that he has been living off of a $176,000 home equity loan, and that he received a $20,000 inheritance and upwards of $75,000 in proceeds from selling investment properties, which he put "in Mason jars and buried . . . in [his] back yard." (Transcript p. 80). Moreover, Father stated,

> I can take care of [the Child] financially if I choose. I could work harder. I've got a property right now that I could sell . . . I got offered.

---

[2] As we have previously cautioned, "we strongly discourage [calculating support without worksheets] and urge trial courts in the exercise of their discretion to require verified child support worksheets in every case. Failure to do so frustrates not only appellate review but also the goals of the child support guidelines." *Hedrick v. Gilbert*, 17 N.E.3d 321, 327 (Ind. Ct. App. 2014).

> I can sell it. I've got thirty-five thousand (35,000) cash I could get out of that one. I'm trained. I've got license with insurance [*sic*].

(Tr. p. 67) (first alteration in original).

[36] During the hearing, the Child's guardian *ad litem* testified that she analyzed Father's financial information and, based on the information that he had provided, determined that he pays at least $51,000 in annual expenses. Relying on this evidence, the trial court determined that Father must earn at least $50,000 to cover his annual expenses, which amounts to $962 per week. Father avers that he "discussed his living expenses at length on the record[,]" and they do not add up to $962 per week, but this is simply an invitation to reweigh the evidence, which we decline to do.

[37] Father also argues that the "payment of expenses does not equal income for child support purposes[,]" but our court has previously found otherwise. (Appellant's Br. p. 29). In *Glover v. Torrence*, 723 N.E.2d at 930, the father submitted a financial declaration to the court indicating that he earned $400 a week, yet paid $1,065 in weekly household expenses. Based on the father's "history of under[]representing his income and the large discrepancy between his reported income and his expenses," our court found that it was within the trial court's discretion to impute income to the father based on the amount of his reported expenses. *Id.* at 936-37. Similarly, based on Father's ability to pay $962 in weekly expenses, we find that the evidence supports the trial court's determination of Father's gross weekly wage.

[38] As to Father's contention that the trial court erred in calculating Mother's weekly income at $356, the record demonstrates that by the second day of the hearing, Mother had obtained a job making $8.90 per hour and was working forty hours per week, which equals $356 per week. We find little merit in Father's claim that Mother's weekly income should also take into account her expenses, or that she receives food stamps and other benefits, child support for her oldest son, and disability benefits on behalf of her daughter. The Support Guidelines specifically exclude food stamps and other public assistance benefits, and generally exclude benefits/support paid on behalf of *other* children, from the definition of weekly gross income. *See* Child Supp. G 3(A)(1). Additionally, Father offers no authority that would require the trial court to calculate Mother's earnings based off of her expenses just because it did so for Father—especially considering that Mother's testimony about her income was straightforward, unlike Father's. Accordingly, the evidence supports the trial court's findings regarding the parties' weekly earnings, and we find no error in its determination that Father should pay $95.00 per week in child support based on a justified deviation from the Support Guidelines.

## CONCLUSION

[39] Based on the foregoing, we conclude that the trial court erred by failing to make a specific and separate determination of the Child's legal custody. We further conclude that the trial court acted within its discretion in declining to sanction Mother for contempt and in recalculating Father's child support obligation.

[40] Affirmed in part and remanded with instructions.

Vaidik, C. J. concurs

Baker, J. concurs in part and dissents in part with separate opinion

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Paternity of V.A.,

A Minor Child,

Robert Anderson (Father),

*Appellant-Petitioner,*

v.

Billy Jo Youngblood (Mother),

*Appellee-Plaintiff*

Court of Appeals Case No.
39A04-1408-JP-375

**Baker, Judge, concurring in part and dissenting in part.**

[43] I dissent from the majority's decision to remand the case for a determination of legal custody. I believe that it is readily apparent from the trial court's orders that it intends for Mother to have full physical and legal custody. In my opinion, a remand of this cause is an unnecessary use of our judicial resources and the parties' time and money. Consequently, I would affirm the trial court in full. In all other respects, I concur.