## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Jul 16 2015, 8:43 am
*Kevin S. Smith*
**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Stacy L. Kelley
Glaser & Ebbs
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

William O. Harrington
Harrington Law, P.C.
Danville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Lee Thompson, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Natasha Nicole Smith, <br> *Appellee-Respondent,* | July 16, 2015 <br><br> Court of Appeals Case No. <br> 32A04-1412-JP-556 <br><br><br> Appeal from the Hendricks Superior Court <br> The Honorable David H. Coleman, Judge <br> Cause No. 32D02-1303-JP-30 |

**Robb, Judge.**

# Case Summary and Issue

[1] In this paternity proceeding, Christopher Thompson ("Father") was ordered on August 12, 2014, to pay child support through an Income Withholding Order which Father's counsel was ordered to submit to the court within seven days.

When counsel failed to do so, Mother's counsel filed a Motion for Rule to Show Cause and ultimately, the trial court ordered Father's counsel to pay attorney's fees to Mother's counsel for securing compliance with the August 12 order. Father's counsel[1] now appeals the trial court's order, raising two issues which we consolidate as one: whether the trial court abused its discretion in holding her in contempt and imposing a sanction. Concluding the trial court did not abuse its discretion as the record supports a finding of willful disobedience of a court order and the payment of attorney's fees incurred by the opposing side is appropriate compensation, we affirm.

## Facts and Procedural History

Natasha Smith ("Mother") gave birth to L.T. in 2009. Father's paternity of L.T. was established by court order in October of 2013. As part of the paternity decree, Father's child support obligation was set dating back to March 2013 when he filed his petition for paternity. He was ordered to pay $200 per week, which included both his basic child support obligation of $153.10 and an additional $46.90 toward an arrearage of $4,899.20. Father's basic obligation was to be reduced to $129.60 when he began exercising parenting time, which he did in April of 2014.

---

[1] Although Father and Mother are the parties to this action, the trial court's order is directed to Father's counsel only, and as such, she is the person appealing the order.

[3] In January of 2014, Mother filed a Motion for Proceedings Supplemental and a Verified Contempt Petition because of Father's failure to pay child support. From the date of the paternity decree to August 8, 2014, Father paid a total of $1,665.00 in child support. The trial court held a hearing on August 11, 2014 on these two motions. Mother was represented at this hearing by William Harrington and Father was represented by Stacy Kelley. The trial court issued an order on August 12, 2014 which found Father in contempt of the paternity decree for failure to pay child support as ordered, established Father's arrearage as of August 8, 2014 as $9,311.20, and ordered:

> Within seven (7) days of the date of this Order, Father's counsel shall submit an Income Withholding Order to the Court directed to Father's employer directing the withholding of child support payments as follows:
>
> > a. Current weekly child support in the amount of $129.60 per week; and
> >
> > b. A weekly arrearage payment in the amount of $70.40 per week, until the arrearage in the amount of $9,311.20 is paid in full.

Appellant's Appendix at 22.

[4] On September 4, 2014, Mother filed a Verified Motion for Rule to Show Cause, alleging that as of that date, no Income Withholding Order had been submitted to the trial court. The motion stated that Harrington had contacted Kelley by email on August 29 to inquire about the status of the Income Withholding Order but received no response. Harrington then contacted the court to inquire whether the Chronological Case Summary ("CCS") reflected the submission of

an Income Withholding Order and was informed that it did not.[2]  The motion averred Father and/or Kelley were in contempt for failure to submit the Income Withholding Order and requested a hearing at which Father and Kelley be ordered to appear and show cause why they should not be found in contempt. The trial court scheduled a hearing for September 22, 2014 at 8:45 a.m. and ordered Father and Kelley to appear.

[5]     On September 8, 2014, Kelley sent an email to Harrington in which she advised that she "faxed the [Income Withholding Order and [August 12, 2014] Order directly to [Father's] employer . . . on August 25, 2014.  [Father] confirmed . . . that they had received the [Income Withholding Order] and would begin deducting child support amount and the arrears amount with the next pay period." *Id.* at 57.  On September 11, 2014, Father filed with the trial court a Notice of Submission of Income Withholding Order/Notice of Support to [Father's] Employer.  Attached to the Notice was a document titled "Income Withholding for Support" which was signed by Kelley in the spot for "Signature of Judge/Issuing Official" and dated August 25, 2014.  Appellant's App. at 33.  The Notice also stated:

> Subsequently, [Father] verified with his employer that child support would be deducted pursuant to the IWO/Notice of Support and the Courts [sic] underlying Court Order beginning the next pay period. The undersigned counsel verified with the Hendricks County Child Support Office that a child support payment for the benefit of the child

---

[2] As this is a "JP" case, the CCS was not available to Harrington online.

in the amount of $200 by income withholding was made on September 5, 2014.

*Id.* at 29.   On September 16, 2014, Harrington sent an email to Kelley in which he stated, "If an Income Withholding Order is not submitted to [the trial court] for his signature this week, I intend to move forward with the Show Cause hearing next Monday." *Id.* at 60.  On September 19, 2014, a Friday, Father filed by fax an Income Withholding Order for the trial court's signature.  The trial court apparently signed the order on September 20, 2014.

[6]   Harrington appeared for the September 22, 2014 show cause hearing, but Father and Kelley did not.  The following proceedings ensued:

> Harrington: Judge, I represent [Mother] . . . the payee on child support.  And you issued an order back on August 12, part of which required Counsel for Father within seven days of the date of that order to submit an Income Withholding Order to the Court directed to Father's employer.  Uh, when that didn't happen I started a series of email communications with Ms. Kelley who is counsel for Father. . . . Uh, all of my email correspondence with her which began on August 29 saying hey, didn't get the Income Withholding Order, uh, have you submitted one to the Court.  And, uh I didn't get a response.  Two weeks later I sent another email and I finally got a response from Counsel saying that she had prepared an Income Withholding Order that she had signed as an officer of the Court and she had submitted to the employer.  And I said well, I don't think that's proper.  You know, I've reviewed the rules; I think the only people who can sign Income Withholding Orders are the Judge or under limited circumstances the Title IV-D Office.  Uh, and then just asked her if you would please just submit an Income Withholding Order.  And she responds and says well, the employer is withholding.  And I said that's great that they're voluntarily withholding but I have no order.  The reason you have an Income Withholding Order is so I have something to enforce, if you would please just submit an Income Withholding Order to the Court. . . . And then without hearing anything from opposing counsel, I find

out when I get to court this morning that she faxed an Income Withholding Order to the Court on Friday which I'm glad she finally did.

The Court: It looks like I signed it . . . Saturday, I think.

Harrington: Uh, but there is an order requiring her to appear and show cause and she's not here. And I'm not trying to make trouble, Judge, but I've spent more than two hours of time just trying to get her to comply with the Court Order and she finally did it on a Friday without even telling me . . . .

Bailiff: Judge, she has called in now this morning when I ran out to make a copy and she thought that would vacate the order – the hearing and that's why she said she didn't appear.

Harrington: And, Judge, if she had called me on Friday and said, Bill, I'm submitting the Income Withholding Order, I probably would have asked you to vacate the hearing . . . .

Transcript at 3-5. Harrington stated he had a total of $649.00 in fees associated with this matter. The trial court ordered Kelley to pay Harrington's $649.00 in attorney's fees "for his time and for her failure to comply with the Court's Order." *Id.* at 6. A written order of the same date states:

> The Court, having reviewed the Motion for Rule to Show Cause, having heard the testimony of counsel for [Mother], and being otherwise duly advised in the premises, now finds that Attorney Kelley should be ordered to pay [Mother's] counsel, William O. Harrington, $649.00 for attorney's fees incurred in attempting to secure Attorney Kelley's compliance with the Order on August 11, 2014 Hearing relating to the preparation and timely submission of an Income Withholding Order.

Appellant's App. at 15.

[7]     Also on September 22, 2014, the trial court received an Emergency Motion to Participate by Phone from Kelley, in which she moved to participate in the September 22, 2014 hearing by phone "as the undersigned counsel believed the

hearing was vacated given the Income Withholding/Notice of Support has been in effect since August 25, 2014 and an additional Income Withholding/Notice of Support was submitted to the Court via facsimile on September 19, 2014." Appellant's App. at 45. The trial court denied the motion because "it was received at 9:41 a.m. when the hearing was at 8:45 a.m." *Id.* at 13. Kelley later explained in an affidavit that she had called the court at 8:40 a.m. on September 22, 2014, to verify the hearing had been vacated. Upon learning it was not, she prepared her emergency motion to fax to the court but discovered her office fax machine was broken. She then attempted to secure local counsel in Hendricks County but was unsuccessful. She was finally able to fax her emergency motion from a neighboring business. *See* Appellant's App. at 54-55.

[8] On October 22, 2014, Kelley filed a Motion to Correct Errors in which she alleged that the trial court's order that she pay attorney's fees was in error because the trial court did not make a finding of contempt against her or Father and there was no basis for such order. Mother filed a statement in opposition and requested additional attorney's fees of $442.50 associated with responding to the motion to correct errors. The trial court denied the motion to correct errors and ordered Kelley to pay Harrington an additional $442.50 in attorney's fees. Kelley now appeals.

# Discussion and Decision

## I. Standard of Review

[9] The decision to find a party in contempt of court is within the trial court's discretion. *In re Paternity of M.F.*, 956 N.E.2d 1157, 1162 (Ind. Ct. App. 2011). We will reverse the trial court's decision only if we find it has abused that discretion. *Id.* A trial court has abused its discretion when the decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Id.* When reviewing a contempt order, we neither reweigh the evidence nor judge the credibility of the witnesses, and we will affirm the trial court's judgment "unless after a review of the entire record we have a firm and definite belief a mistake has been made by the trial court[.]" *Topolski v. Topolski*, 742 N.E.2d 991, 994 (Ind. Ct. App. 2001).

[10] In addition, the trial court has the inherent power to fashion an appropriate sanction for the disobedience of its orders. *Kolbet v. Kolbet*, 760 N.E.2d 1146, 1154 (Ind. Ct. App. 2002). Attorney fees are available as a sanction in civil contempt proceedings. *Cowart v. White*, 711 N.E.2d 523, 533 (Ind. 1999).

## II. Contempt Finding and Sanction

[11] "Willful disobedience of any lawfully entered court order of which the offender had notice is indirect contempt." *In re M.F.*, 956 N.E.2d at 1163 (quotation omitted). The order must be clear and certain so that there is no question as to what the party must do or not do and no question as to whether the order has been violated. *Bandini v. Bandini*, 935 N.E.2d 253, 264 (Ind. Ct. App. 2010)

(quotation omitted). Indirect contempt proceedings require due process protections, including notice and the opportunity to be heard. *Henderson v. Henderson*, 919 N.E.2d 1207, 1211-12 (Ind. Ct. App. 2010); *see* Ind. Code § 34-47-3-5 (setting forth the process for a rule to show cause).

[12] Here, the order which Kelley is alleged to have violated was clear and certain: it stated that "[w]ithin seven (7) days of [August 12, 2014], Father's counsel *shall submit* an Income Withholding Order *to the Court* directed to Father's employer directing the withholding of child support payments . . . ." Appellant's App. at 22 (emphasis added). Instead of following that clear directive to prepare an income withholding order and submit it to the trial court, Kelley prepared an income withholding order, signed it herself as the "issuing official," and submitted it to Father's employer directly on August 25, 2014, without notifying Mother's counsel or the trial court. When the deadline for submitting the income withholding order to the trial court came and went, Mother's counsel inquired first of Kelley and then of the trial court whether one had been submitted. Not hearing from Kelley and being informed by the trial court that one had not been submitted, Mother filed a Motion for Rule to Show Cause alleging that Father and/or Kelley were in contempt of court because no income withholding order had been submitted to the trial court as ordered. A hearing was scheduled and an order was entered directing Father and Kelley to appear at that time and show cause why they should not be found in contempt.

[13] Upon receiving the motion for rule to show cause and order to appear, Kelley informed Mother's counsel by email that she had submitted the income

withholding order directly to Father's employer and had verified that the employer had received it and would begin withholding with Father's next paycheck. She also filed a notice stating the same with the trial court. When Mother's counsel expressed continued dissatisfaction with this procedure out of concern that the income withholding order—whether or not Father's employer was currently complying with it—was not a valid enforceable order without the court's signature, Kelley submitted an income withholding order to the trial court for its signature the last business day before the show cause hearing. She did not notify Mother's counsel that she had done so and did not request that the show cause hearing be vacated. She did not appear at the show cause hearing.

[14] Kelley argues that the trial court did not find that she willfully disobeyed the court's order and therefore did not make a proper finding of contempt.[3] Although the trial court never said the words "contempt" or "willfully disobeyed" in either its statement from the bench at the show cause hearing or in its order, the trial court did find that Kelley "fail[ed] to comply with the

---

[3] Somewhat confusingly, Mother's brief alleges Kelley's arguments with respect to contempt are inapposite because the trial court did not make a contempt finding. *See* Appellee's Brief at 14. She instead relies on the trial court's discretion pursuant to Indiana Code section 31-14-18-2 to order a party to a paternity action to pay a reasonable amount for the other party's attorney's fees after considering the resources and financial earning abilities of the parties, misconduct by either party that created additional expenses, and any other appropriate factors. *See id.* at 9; *see also In re Paternity of P.B.*, 932 N.E.2d 712, 724 (Ind. Ct. App. 2007). However, Indiana Code section 31-14-18-2 concerns ordering a *party* to pay attorney's fees and is not relevant to this situation. In addition, this argument directly contradicts Mother's response to Kelley's Motion to Correct Errors, in which she stated that "[g]ood cause existed for the Court to find that Father's counsel willfully violated the [Income Withholding Order] Submission Order," Appellee's App. at 4, which is the definition of contempt.

Court's Order," tr. at 6, and noted that she was not in "compliance with the [August 12, 2014] Order . . . relating to the preparation and timely submission of an Income Withholding Order," Appellant's App. at 15. The facts and circumstances before the court on which it based those findings are that Kelley did not initially comply with the court's order by submitting the Income Withholding Order to the court as ordered. Perhaps that could have been considered a mistake or an oversight, but after the failure to comply with the terms of the court's order were pointed out through the motion for rule to show cause, she *continued* to disobey the court's order. Rather than submit the Income Withholding Order to the trial court upon receiving the motion, she instead filed a notice that she had taken another route to get the Income Withholding Order in place. When Mother's counsel finally prevailed upon Kelley to submit the Income Withholding Order as ordered, she did so on the last business day before the hearing without notifying Mother's counsel.

[15] Moreover, the order to appear for the show cause hearing did *not* state that Father and Kelley were *either* to comply with the court's previous order *or* appear for the hearing; it simply ordered them to appear. When Kelley submitted the Income Withholding Order to the trial court, she did not request that the show cause hearing be vacated. She also did not notify Mother's counsel so that he would know in advance of the hearing that she had complied. Kelley therefore had no legitimate reason to believe the hearing would not be held and further willfully disobeyed the court in failing to appear when ordered to do so. Finally, Kelley was given the opportunity to be heard

regarding her conduct but did not avail herself of it by appearing at the show cause hearing.

[16] It appears that much of this is due to counsel on both sides failing to engage in more collegial communication between themselves. It further appears that Father's employer was honoring the Income Withholding Order submitted by Kelley, whether or not it was in proper form,[4] and that child support was being paid to Mother. Nonetheless, on the facts of this case, we are not left with a firm and definite conviction that a mistake has been made and we cannot say that the trial court abused its discretion in finding Kelley in contempt.

[17] As to the order that she pay Mother's attorney fees as a sanction for her contempt, Kelley argues that the trial court did not make the findings required to order those fees pursuant to Indiana Code section 34-52-1-1. That section provides:

> (a) In all civil actions, the party recovering judgment shall recover costs, except in those cases in which a different provision is made by law.
> (b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

---

[4] It is beyond the scope of this opinion to discuss whether it was proper for Kelley to sign the Income Withholding for Support as an "issuing official" and whether it was an enforceable Income Withholding Order in that form.

> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.

[18] The trial court was not awarding fees pursuant to this section. Mother's request for attorney's fees was made when she sought the trial court's intervention in gaining Father's compliance with child support payments. As such, the trial court was using its inherent power to impose a sanction for contempt, which may include attorney's fees associated with the contempt proceedings to compensate the aggrieved party. *See Cowart*, 711 N.E.2d at 533. We hold the trial court did not abuse its discretion in awarding fees in this case.

# Conclusion

[19] The trial court did not abuse its discretion in finding Father's counsel in contempt for willfully failing to comply with the court's order regarding the submission of an income withholding order or in ordering her to pay Mother's attorney's fees incurred in securing compliance as a sanction. The judgment of the trial court is affirmed.

[20] Affirmed.

May, J., and Mathias, J., concur.